IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

META PLATFORMS, INC.,
a corporation,

      Plaintiff-Appellant,

        v.

FEDERAL TRADE COMMISSION, et al.,

      Defendants-Appellees.

No. 24-5054

## DEFENDANTS-APPELLEES' OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

JOSHUA M. SALZMAN
ANNA M. STAPLETON
*Attorneys, Appellate Staff
Civil Division, Room 7213
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-3511
Anna.M.Stapleton@usdoj.gov*

# APPELLEES' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Plaintiff-appellant is Meta Platforms, Inc.  Defendants-appellees are the Federal Trade Commission and Lina M. Khan, Rebecca K. Slaughter, and Alvaro Bedoya, in their official capacities as Commissioners of the Federal Trade Commission.

## B.    Rulings Under Review

Plaintiff-appellant appeals from the memorandum and order issued March 14, 2024, by the Hon. Randolph D. Moss (D.D.C. Case No. 1:34-cv-03562), denying plaintiff-appellant's motion for a preliminary injunction and denying defendants-appellees' motion to dismiss.

## C.    Related Cases

In *United States v. Facebook, Inc.*, No. 23-5280 (D.C. Cir.), this Court recently denied plaintiff-appellant's motion for an injunction pending appeal with respect to the same administrative proceeding that is at issue in this case.  Merits briefing is ongoing.

*/s/ Anna M. Stapleton*
Anna M. Stapleton

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................. 1

BACKGROUND ................................................................................. 3

    I.    Legal Background ...................................................................... 3

    II.   Factual Background and Prior Proceedings ............................... 4

ARGUMENT ...................................................................................... 11

    I.    Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction. ................................................................................ 12

    II.   Meta Is Not Likely To Succeed On The Merits. ........................ 15

       A.    Meta fails to show a due process violation ................................... 15

       B.   Meta's Article II claim is squarely foreclosed by precedent. .. 20

       C.   Meta's Article III and Seventh Amendment claims fail. .......... 21

       D.   Meta's Article I claim is meritless. .................................................. 23

    III.   The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue. . 24

CONCLUSION ...................................................................................... 25

# GLOSSARY

FTC                       Federal Trade Commission

## INTRODUCTION

The Federal Trade Commission (FTC or Commission) initiated an administrative proceeding based on indications that Meta Platforms, Inc. (Meta) may have violated a prior Commission order, and the rights of its customers, by failing to implement necessary privacy protections. The Commission has identified the evidence giving rise to its concerns and has offered Meta the opportunity to offer contrary evidence and to otherwise explain why the Commission should not order Meta to implement additional safeguards. The Commission has not reached any final determination and is awaiting Meta's response. But rather than avail itself of the opportunity to be heard, Meta has resorted to preemptive litigation in an effort to have the Commission proceeding enjoined.

Meta launched a two-pronged attack, asking two separate district courts to enjoin the Commission from determining whether additional privacy protections are warranted. Both attempts were unsuccessful and both have been appealed to this Court. When the first of these appeals reached this Court, *United States v. Facebook, Inc.*, No. 23-5280 (D.C. Cir. filed Nov. 29, 2023), Meta filed an unsuccessful motion for an

injunction pending appeal.  In rejecting that motion, the Court concluded (among other things) that Meta had not shown that it "will be irreparably harmed by participating" in the Commission proceeding, and that the Commission's proceeding "implicate[s] important public interests" that were not "outweighed by any cognizable harm to [Meta] or the public from moving forward with the [Commission] proceeding during the pendency" of Meta's appeal.  Order at 1, 2, *Facebook, Inc.*, No. 23-5280 (Mar. 12, 2024) (*Facebook* Order).

Meta now seeks the same relief in this case (its second appeal). In so doing, Meta does not acknowledge, let alone attempt to distinguish, this Court's prior determination that Meta had failed to show that the Commission's proceeding should be enjoined.  Meta's apparent contention, however, is that the irreparable harm calculus is different here because this case, unlike the prior appeal, involves a grab bag of constitutional challenges to the Commission's structure.  But Meta is incorrect in suggesting that the bare assertion of constitutional challenges to an agency's authority to act obviates the need to establish irreparable harm.  And absent such a rule, Meta's claim of irreparable

harm is as deficient here as it was in the context of its prior unsuccessful motion.

Moreover, Meta's motion should be denied for the separate reason that it has shown no likelihood of success on any of its assorted constitutional challenges. Each of Meta's claims—brought under Articles I, II, and III of the Constitution and the Fifth and Seventh Amendments—attacks longstanding features of the Commission's structure that are supported by decades of precedent. Because, as the district court correctly observed, "each of Meta's claims is foreclosed by binding precedent" (A718), an injunction pending appeal is unwarranted.

## BACKGROUND

### I.    Legal Background

Congress charged the Commission with halting "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). To that end, the Commission is authorized to initiate administrative proceedings that can result in final orders commanding a respondent "to cease and desist from" a practice determined to be unfair or deceptive.

*Id.* § 45(b).  The Attorney General can bring a civil action for sanctions against a party who has violated a final Commission order.  *Id.* § 45(*l*).

The Commission is authorized to "modify" a final order, including to impose more stringent requirements, if "conditions of fact or of law have so changed as to require such action or if the public interest shall so require."  15 U.S.C. § 45(b).  Before modifying an administrative order, the Commission provides "notice and opportunity for hearing," *id.*, via "an order to show cause, stating the changes it proposes to make" and "the reasons they are deemed necessary," 16 C.F.R. § 3.72(b)(1).  No modification is implemented before the respondent has the opportunity to respond.  *Id.*  So long as the response "raise[s] substantial factual issues," the Commission provides for appropriate hearings, such as an evidentiary hearing before an administrative law judge.  *Id.* § 3.72(b)(2).  If the administrative proceeding culminates in a final Commission decision modifying the order, the respondent may seek judicial review in a court of appeals.  *See* 15 U.S.C. § 45(b), (c).

## II.    Factual Background and Prior Proceedings

1.  In 2011, the Commission issued an administrative complaint against Meta (then called Facebook), alleging that it misled users

regarding the privacy protections on its social media platform. A702. That proceeding led to a settlement that was implemented through a Commission order (the 2012 Order) that required Meta to implement certain changes to its privacy practices. A702-03.

In 2018, the Commission commenced an investigation into whether Meta had violated the 2012 Order. A703. The parties ultimately reached another settlement, under which Meta agreed to pay $5 billion and to consent to reopening the 2012 Order for the purpose of making certain modifications. A704. To implement the settlement, the Department of Justice initiated a civil action against Meta in the District Court for the District of Columbia, seeking monetary penalties and injunctive relief, and then moved with Meta's consent for entry of a stipulated order imposing the terms the parties had agreed upon. A704. The matter was assigned to Judge Kelly, who entered the stipulated order. A704. The Commission subsequently reopened its administrative proceeding and issued a new order (the 2020 Order), containing the modifications to which Meta had consented. A704.

Among other things, the 2020 Order required Meta to hire an independent assessor to conduct privacy reviews. A705. In 2021,

Meta's assessor produced an initial report, finding gaps and weaknesses in Meta's privacy practices. A705. In the wake of these findings, Commission staff initiated an investigation that ultimately led the Commission to issue an Order to Show Cause why it should not make certain modifications to the 2020 Order. A706. The Order to Show Cause identified evidence that Meta: (1) failed to implement an effective privacy program; (2) misrepresented third-party information sharing; and (3) misrepresented privacy protections in a children's application. A705-06. Consistent with Commission rules, Meta was given 30 days to file a response.

2. Instead of engaging with the concerns identified in the Order to Show Cause, Meta has pursued two separate district court proceedings challenging the Commission's authority to modify the 2020 Order.

a. First, Meta returned to Judge Kelly, arguing that under the terms of the stipulated order, Judge Kelly had retained exclusive jurisdiction to modify the Commission's 2020 Order. A706. In November 2023, Judge Kelly rejected that contention, concluding that the Commission retained its authority to modify the 2020 Order. A706-07.

Meta appealed to this Court and filed a motion for an injunction pending appeal. A motions panel denied Meta's motion, concluding that Meta had not demonstrated any of the prerequisites to injunctive relief, including the need to show irreparable harm. See *Facebook* Order. The Court emphasized that the Commission's Order to Show Cause "asserts reason to believe that, among other things, [Meta] failed to establish and implement an effective privacy program as mandated" by the 2020 Order, and that the Commission's "concerns implicate important public interests." *Facebook* Order 2.

b. Meta also separately filed this suit, alleging that the Commission's proceeding should be enjoined under a slew of constitutional theories. Meta moved for a preliminary injunction and the Commission cross-moved to dismiss for failure to state a viable claim.

The district court denied Meta's motion. A740.[1] The court observed that Meta's motion "asks the Court to treat a host of

---

[1] While the court described the Commission's arguments for dismissal as "overwhelming," it denied the Commission's cross-motion without prejudice "out of an abundance of caution," pending disposition of *SEC v. Jarkesy*, 143 S. Ct. 2688 (2023). A739.

controlling Supreme Court precedents as 'obsolete,'" and "despite binding D.C. Circuit precedent to the contrary, to treat *all* alleged 'structural' constitutional claims . . . as *per se* irreparable." A695. Accordingly, Meta "failed to carry its substantial burden of showing that it is entitled to extraordinary, equitable relief." A695.

With respect to irreparable harm, the court noted this Court's conclusion that "the expense and annoyance of litigation, including in an FTC proceeding, does not constitute irreparable injury." A709 (quoting *Facebook* Order 1). Nor did Meta's assertion that it would be "forced to participate in 'an illegitimate proceeding, led by an illegitimate decision-maker'" materially alter the analysis. A710. The court rejected Meta's reliance on *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), concluding that while *Axon* recognized that certain structural constitutional challenges may be brought before the conclusion of an administrative proceeding, that case "had nothing to do with whether and when courts should grant preliminary injunctive relief." A714.

The district court also found that "the motion fails for a second reason as well: far from establishing a likelihood of success on the

merits, each of Meta's claims is foreclosed by binding precedent." A718.

First, Meta's argument that FTC Commissioners are unconstitutionally protected by a for-cause removal requirement "is squarely foreclosed" by the Supreme Court's decision in *Humphrey's Executor v. United States*, 295 U.S. 602, 629 (1935). A721-24.

Second, Meta's contention that the Commission could not, in compliance with constitutional requirements, both "initiate or reopen" and "decide[]" administrative enforcement proceedings "run[s] head-on into controlling Supreme Court precedent to the contrary." A724-25 (quotation marks omitted) (citing *Withrow v. Larkin*, 421 U.S. 35 (1975)). And though Meta alleged pervasive bias, Meta was "unable to back up this assertion with support." A727.

Third, the district court concluded that an FTC modification proceeding is not the type of action that can be heard only in an Article III court. Such an action—being "between the FTC, a government agency, and Meta, a party 'subject to [FTC] authority,'" A731 (alteration in original) (quoting *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018))—falls within Article III's exception for proceedings adjudicating public rights. A729-30.

Fourth, recognizing that "Supreme Court precedent establishes that" there is no jury trial right "when Congress properly assigns a matter to adjudication in a non-Article III tribunal," the district court rejected Meta's Seventh Amendment claim as necessarily failing upon rejection of the Article III claim. A734 (quoting *Oil States Energy*, 584 U.S. at 345).

Fifth, and finally, "[b]ecause the decision of how to enforce the law is a quintessential exercise of executive authority, *see* U.S. Const., Art. II, § 3," the district court concluded that "Congress cannot have impermissibly delegated its legislative power when it gave the FTC a choice of two different mechanisms, one administrative and the other judicial, to enforce its cease-and-desist orders." A736 (citing *Buckley v. Valeo*, 424 U.S. 1, 138 (1976)).

Having concluded that Meta would not suffer irreparable harm absent an injunction and was not likely to succeed on the merits, the district court also pointed out that the balance of harms and the public interest weighed against entry of an injunction. It recognized that, "if the FTC's allegations in its [Order to Show Cause] are proven correct,

the allegations against Meta are such that it would be in the public interest for the modification proceeding to move forward." A739.

3. At a hearing following its denial of Meta's motion for a preliminary injunction, the district court stated that it would deny any motion for an injunction pending appeal. A744; *see* Fed. R. App. P. 8(a).

## ARGUMENT

Meta seeks an injunction pending appeal that would bar the Commission from determining whether Meta failed to implement effective privacy protections and, relatedly, whether it would serve the public interest to modify the 2020 Order to incorporate additional protections for Meta's customers.

An injunction pending appeal is an "extraordinary remedy." *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emp. v. National Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966) (per curiam). To obtain an injunction, Meta must demonstrate (1) it is likely to succeed on the merits; (2) an injunction will prevent irreparable harm; and (3) the harm is not outweighed by harm to third parties and the public interest. *Winter v. National Res. Def. Council*, 555 U.S. 7, 20

(2008). Because Meta cannot prevail on any, let alone all, of these factors, it is not entitled to an injunction pending appeal.

## I. Meta Cannot Show It Will Suffer Irreparable Harm Absent An Injunction.

Meta asserts that it will suffer irreparable harm if it is required to appear before the Commission and respond to the Order to Show Cause. But this Court has previously declined to enjoin that very same proceeding, concluding that Meta "ha[d] not met the 'high standard for irreparable injury.'" *Facebook* Order 1 (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)). As the Court explained, "the expense and annoyance of litigation, including in an FTC proceeding, does not constitute irreparable injury." *Id.* (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)).

In denying Meta's motion for a preliminary injunction, the district court recognized that Meta's arguments regarding injury in that prior case "overlap in significant respects" with its arguments here. A710. While Meta asserted different legal theories in the two proceedings, its core contention regarding irreparable harm remains the same: that the FTC lacks authority to carry out the modification proceeding and that the company would be irreparably injured by appearing before the

Commission. Accordingly, Meta's present motion should fail for the same reason as its prior motion.

Meta insists that its assertion of structural constitutional challenges to the Commission's authority inherently satisfies the irreparable-harm requirement. Mot. 5-6, 20-22. But this Court has squarely rejected that premise, holding in the course of denying a motion for an injunction pending appeal that "the 'violation of separation of powers' by itself is not invariably an irreparable injury." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (per curiam).

Meta asserts that *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), established a contrary rule. But *Axon* is a jurisdictional holding that "merely recognizes that being subject to an agency's unconstitutional exercise of authority constitutes a present injury." A713. The *Axon* Court had no cause to address the standard for injunctive relief, and nothing in its opinion suggests that *every* plausible allegation of a "here-and-now" injury, *Axon*, 598 U.S. at 192, meets the high standard for irreparable harm. *Accord Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015)

13

(identifying another instance where the Supreme Court "resolved its jurisdiction to hear a [structural] constitutional challenge" but "had no occasion to address a federal court's exercise of equitable discretion to deny injunctive . . . relief"). Indeed, any holding that an agency must "be stopped in its tracks" whenever a plaintiff alleges a structural constitutional flaw would "ignore[] traditional constraints on separation-of-powers remedies." *John Doe Co.*, 849 F.3d at 1133. A plaintiff may, in some circumstances, be able to allege *additional* harms that rise to the level of irreparable injury. *See, e.g., Alpine Sec. Corp. v. Financial Indus. Regulatory Auth.*, No. 23-5129, 2023 WL 4703307, at *1 (D.C. Cir. July 5, 2023) (Walker, J., concurring) (explaining that a company's plausible allegations that "the ongoing [agency] enforcement proceedings would put it out of business" constituted irreparable harm). But a separation-of-powers claim is not, on its own, dispositive. And because Meta, unlike the *Alpine* plaintiff, has offered nothing beyond the bare assertion of a structural challenge, it has failed to establish irreparable harm.[2]

_____

[2] Even if the Court believes that *John Doe* is in tension with *Axon*, this Court adheres to circuit precedent except where intervening Supreme Court authority "effectively overruled or eviscerated" circuit

## II. Meta Is Not Likely To Succeed On The Merits.

Meta also fails to show that it is likely to succeed on the merits of any of its five claims.

### A. Meta fails to show a due process violation.

1. Meta's lead contention is that the Commission impermissibly exercises both prosecutorial and judicial functions, in purported violation of Meta's right to due process. But the Commission's longstanding structure, which is common to many agencies, comports with established constitutional principles. Indeed, Meta acknowledges (Mot. 10), "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation." *Withrow v. Larkin*, 421 U.S. 35, 58 (1975). Moreover, agency proceedings are entitled to a "presumption of honesty and integrity in those serving as adjudicators." *Id.* at 47. Accordingly, the Fifth Circuit recently concluded, in accordance with the district court here, that a due process

---

law. *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023). Because *Axon* is only a jurisdictional holding that does not even mention irreparable harm, it cannot satisfy that high bar here.

challenge to "the FTC's structural design" is "barred by precedent." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023).

Meta argues that it can make a sufficient showing of structural bias by pointing to the Commission's allegedly high win rate in administrative proceedings. But it is not true that the Commission has "not los[t] a single administrative case in the past quarter-century." Mot. 11-12. As the district court recognized, one study shows that, as of 2016, the Commission ended up dismissing more than a quarter of administrative cases before it, including dismissing 16% of cases on the merits. A728 (citing Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. Competition L. & Econ. 623, 626 (2016)). Even were that not the case, courts—including this one—have repeatedly rejected statistics about outcomes as evidence of bias. *Southern Pac. Commc'ns Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 995 (D.C. Cir. 1984) ("We conclude that the statistical one-sidedness of the trial court's evidentiary, factual and legal rulings simply cannot be used to support an inference of judicial bias."); *see also Singh v. Garland*, 20 F.4th 1049, 1055 (5th Cir. 2021). And as the district court cogently observed, "it is

equally plausible that a high win-rate is a product of caution and due diligence on the FTC's part in deciding which discretionary enforcement actions to bring." A729.[3]

Meta falls equally short in invoking a purported public perception of bias. Meta's allegations here bear no resemblance to the circumstances under which courts have found a sufficiently "significant risk of actual bias" to trigger due process concerns in the absence of a finding of actual prejudgment, which requires at least "evidence" casting doubt on the adjudicator's impartiality. *Wildberger v. American Fed'n of Gov't Emps.*, 86 F.3d 1188, 1196 (D.C. Cir. 1996). Nothing about the Commission's operations presents "special facts and circumstances" that would warrant departure from the normal rule that the fact the same agency makes the "initial charge or determination of probable cause and the ultimate adjudication . . . does not result in a

---

[3] Contrary to Meta's assertion, the Commission did not concede before the Ninth Circuit that it has a 100% win rate in administrative proceedings. *See* Mot. 11-12 (discussing *Axon Enterprises, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021), *rev'd. on other grounds*, 598 U.S. 175). Because that appeal concerned only a threshold jurisdictional question, the Commission merely chose not to engage with various assertions the plaintiff had made that went only to the merits of the underlying due process claim.

procedural due process violation." *Withrow*, 421 U.S. at 58.  If Meta were correct that a due process problem arises anytime a segment of the public nonetheless believes this design creates an inherent risk of bias, that rule would effectively abrogate *Withrow*.

2.  Meta also argues that the Commission has exhibited bias in Meta's own case.  Mot. 13-16.  As a threshold matter, this Court should not consider that contention.  Meta's ability to bring a jurisdictionally sound challenge to an ongoing Commission proceeding depends on its ability to invoke a limited exception to the normal rule that judicial review is unavailable until a Commission proceeding has culminated in a final order.  *Standard Oil Co.*, 449 U.S. at 244.  That exception is limited to constitutional challenges that "object to the Commission['s] power generally," not its application in a particular case.  *Axon*, 598 U.S. at 193; *see also Loma Linda-Inland Consortium for Healthcare Educ. v. National Labor Relations Bd.*, No. 23-5096, 2023 WL 7294839, at *11 (D.C. Cir. May 25, 2023) (per curiam).

In any event, Meta fails to identify any plausible evidence of bias in the Commission's Order to Show Cause.  As the district court rightly explained, that the Commission has investigated and identified

concerns regarding Meta's conduct and compliance with the existing orders does not imply that the outcome of the modification proceeding is preordained. A726; *see Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976) ("Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not[] . . . disqualify a decisionmaker."); *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948). To the contrary, that statement of the Commission's initial view of the facts is designed to give Meta notice of the reasons why the existing order may need to be modified and explicitly states that the Commission only "*proposes* modifying the [2020] Order" in the specified ways. A131 (emphasis added); *see* 15 U.S.C. § 45(b) (requiring notice and opportunity for hearing before modification); 16 C.F.R. § 3.72(b)(1) (prescribing the requirements for a show-cause order and providing an opportunity for a response). Only after consideration of any answer Meta files, and "process . . . appropriate to resolve any issues that arise from that Answer," will the Commission "determine whether to make the . . . Proposed Decision and Order final or modify it in any way." A120. Nothing in that language forecloses the possibility that, after full consideration, the Commission

may choose to impose no modifications at all.  *Cf.* Mot. 15.  And Meta's assertion notwithstanding (Mot. 14), the Commission does not exceed its proper function when it exercises its statutory authority to consider whether one of its own orders should be modified in light of evidence suggesting continuing violations by Meta.  *See* 15 U.S.C. § 45(b).

### B.    Meta's Article II claim is squarely foreclosed by precedent.

Meta alleges that the FTC Commissioners' removal protections impermissibly insulate them from Presidential control in contravention of Article II.  *See* Mot. 16-17 (citing 15 U.S.C. § 41).  But the Supreme Court rejected an identical challenge in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  Meta contends that *Humphrey's Executor* has been overtaken, but the Supreme Court has repeatedly declined to overrule that decision.  *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2199-2200 (2020); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021).  Meta insists that changes in the Commission's authorities have rendered *Humphrey's Executor* inapplicable to the very same statute upheld in that case.  But "the question of whether the FTC's authority has changed so fundamentally as to render *Humphrey's Executor* no longer binding is for the Supreme

Court" alone. *Illumina*, 88 F.4th at 1047. Meta fails to show that it would be appropriate to treat a Supreme Court decision as a dead letter when that Court has declined to overrule it.

## C. Meta's Article III and Seventh Amendment claims fail.

Meta's claims under Article III and the Seventh Amendment suffer from a common flaw: because this case involves the adjudication of public rights, not private ones, there is no constitutional bar to the Commission proceeding in an administrative forum.

When, as here, "the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact," *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 450 (1977), it need not do so in an Article III court. A730-31. "The FTC Act created a new legal duty, for the benefit of the public at-large, that was unknown to the common law, because it 'prevent[s]' business[es] from using unfair or deceptive acts or practices, 15 U.S.C. § 45(a)(2), before those practices result in harm to consumers." A733 (first alteration in original) (citation omitted) (quotation marks omitted). Administrative proceedings to enforce those

duties accordingly do not violate Article III. *Atlas Roofing*, 430 U.S. at 444, 459.

Because claims under the FTC Act can be properly adjudicated in an administrative forum, it follows that Meta's Seventh Amendment claim also fails. A734. "[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States Energy Servs, LLC v. Greene's Energy Grp, LLC*, 584 U.S. 325, 345 (2018) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989)). Moreover, Meta's Seventh Amendment claim suffers from the additional flaw that the only remedies available in a Commission proceeding are injunctive in nature and would not trigger the right to a jury trial, even in an action in court. *See* A733 (explaining that the Commission cannot impose monetary sanctions administratively).

Meta's attempt (Mot. 19-20) to reframe its duties as contractual obligations fall flat. Although the terms of the 2020 Order resulted from a negotiated settlement, the Order itself is neither a settlement nor a contract—it is an order. And the Commission's authority to

modify the 2020 Order—after following the required procedures—flows from the Commission's statutory authority, s*ee* 15 U.S.C. § 45(b), not from any settlement provision.

### D. Meta's Article I claim is meritless.

Meta contends that Congress has impermissibly delegated legislative authority to the Commission, in violation of Article I, by granting it discretion to enforce the 2020 Order either through an administrative proceeding for modification, or through an action in court for sanctions. But the election of whether and how to enforce the law is an exercise of executive—not legislative—power. *See Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (explaining that the executive "enforcement power" includes "discretionary power to seek judicial relief"); A734-38.

This case is also distinguishable from the Fifth Circuit's holding in *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023), which found a non-delegation violation where the Securities and Exchange Commission had discretion whether to seek monetary penalties in court (where the defendant would have a right to a jury) or administratively (where it would not). Even were *Jarkesy*

persuasive, and it is not, *see, e.g.*, A736 n.9, the Commission can obtain monetary penalties only in court.  *See, e.g.,* 15 U.S.C. 45(*l*).  An administrative action can result only in a modified order that imposes new prospective duties to protect consumers, not a retrospective sanction.

## III.  **The Balance Of The Equities And Public Interest Favor Allowing The Commission's Administrative Proceedings To Continue.**

The remaining factors confirm that injunctive relief is unwarranted.  A panel of this Court has already recognized the Commission's substantial interest in being able to decide whether Meta "failed to establish and implement an effective privacy program as mandated by the 2020 FTC order."  *Facebook* Order 2.  The Order to Show Cause explains that the Commission has good reason to believe Meta's privacy practices continue to put consumers' privacy at risk and that modifications to the 2020 Order would help to address those risks.  *See* A738.  While the company seeks to cast doubt on the Commission's timeliness (Mot. 24), the Commission should not be faulted for its thorough investigation or for providing the district courts with the opportunity for orderly consideration of Meta's preemptive suits, and it

is Meta that must justify any further delay in the Commission proceedings. Ultimately, "if the FTC's allegations in its [Order to Show Cause] are proven correct," those allegations "are such that it would be in the public interest for the modification proceeding to move forward." A739. Meta fails to establish the kind of "certain and great" harm, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006), capable of overcoming the serious public interests at stake here.

## CONCLUSION

For the foregoing reasons, Meta's motion should be denied.

Dated: March 21, 2024

Respectfully Submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOSHUA M. SALZMAN

*s/ Anna M. Stapleton*
ANNA M. STAPLETON
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*
*Anna.M.Stapleton@usdoj.gov*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,667 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the word count of Microsoft Word.

                                                     /s/ Anna M. Stapleton
                                                     Anna M. Stapleton

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Anna M. Stapleton
Anna M. Stapleton