ORAL ARGUMENT NOT YET SCHEDULED
No. 24-5054

# In the United States Court of Appeals
# For the District of Columbia Circuit

———————— ❋ ————————

META PLATFORMS, INC.,
*Plaintiff-Appellant*

v.

THE FEDERAL TRADE COMMISSION

– and –

LINA M. KHAN, REBECCA KELLY SLAUGHTER, and ALVARO BEDOYA,
in their official capacities as Commissioners of the Federal Trade Commission,
*Defendants-Appellees.*

———————— ❋ ————————

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL**

———————— ❋ ————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA NO. 1:23-CV-03562-RDM

———————— ❋ ————————

Paul J. Nathanson
DAVIS POLK & WARDWELL LLP
901 15th Street, NW
Washington, DC 20005
Tel: (202) 962-7000
paul.nathanson@davispolk.com

James P. Rouhandeh
Michael Scheinkman
David B. Toscano
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

*Counsel for Plaintiff-Appellant Meta Platforms, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

I.      Meta Will Suffer Irreparable Harm Absent an Injunction .............................3

II.     Meta's Appeal Likely Will Succeed and, at a
        Minimum, Will Raise Serious Questions .......................................................6

        A.      Meta Likely Will Prevail on Its Due Process Claim.............................6

        B.      Meta Likely Will Prevail on Its Article II Claim ................................9

        C.      Meta Likely Will Prevail on Its Other Claims ...................................10

III.    The Balance of Equities and Public Interest
        Strongly Favor an Injunction Pending Appeal .............................................11

CONCLUSION ....................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u> <span style="float:right"><u>PAGE(S)</u></span>

*Ala. Ass'n of Realtors v. HHS*,
   141 S.Ct. 2485 (2021) ....................................................................... 11

*In re Al-Nashiri*,
   921 F.3d 224 (D.C. Cir. 2019) ...................................................... 2, 6

*Alpine Sec. Corp. v. FINRA*,
   2023 WL 4703307 (D.C. Cir. July 5, 2023) ................................. 5, 12

*Armour & Co. v. Wantock*,
   323 U.S. 126 (1944) ........................................................................ 9

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023) ...............................................................*passim*

*Chaplaincy of Full Gospel Churches v. England*,
   54 F. 3d 290 (D.C. Cir. 2006) ........................................................ 2

*Cigar Ass'n of Am. v. FDA*,
   317 F. Supp. 3d 555 (D.D.C. 2018) ................................................ 12

*Elmo Div. of Drive-X Co. v. Dixon*,
   348 F.2d 342 (D.C. Cir. 1965) ........................................................ 11

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) .................................................... 11–12

*Humphrey's Ex'r v. United States*,
   295 U.S. 602 (1935) ..................................................................... 9–10

*Illumina, Inc. v. FTC*,
   88 F.4th 1036 (5th Cir. 2023) ......................................................... 10

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ........................................................... 10

*John Doe v. CFPB*,
   849 F.3d 1129 (D.C. Cir. 2017).................................................... 4–5

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020) ....................................................... 2, 6

*Morgan Drexen, Inc. v. CFPB*,
    785 F.3d 684 (D.C. Cir. 2015) ........................................................ 4

*NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*,
    927 F.3d 1 (1st Cir. 2019) ............................................................. 11

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982) ..................................................................... 11

*Oceanic Steam Nav. Co. v. Stranahan*,
    214 U.S. 320 (1909) ................................................................... 10

*San Francisco v. USCIS*,
    981 F.3d 742 (9th Cir. 2020) ....................................................... 12

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    2023 WL 3864557 (D.D.C. June 7, 2023) ......................................... 4

*Seila Law LLC v. Consumer Fin. Protection Bureau*,
    140 S. Ct. 2183 (2020) .................................................................. 9

*UC Health v. NLRB*,
    803 F.3d 669 (D.C. Cir. 2015) ....................................................... 9

*United States v. ITT Cont'l Baking Co.*,
    420 U.S. 223 (1975) ................................................................... 11

*Withrow v. Larkin*,
    421 U.S. 35 (1975) ...................................................................... 8

### STATUTES & RULES

15 U.S.C. § 45(b) ............................................................................ 10

15 U.S.C. § 45(l) ............................................................................ 10

15 U.S.C. § 53(b) ............................................................................ 12

16 C.F.R. § 3.72(b)(1) ...................................................................... 7

O<small>THER</small> A<small>UTHORITIES</small>

Maureen K. Ohlhausen, *Administrative Litigation at the FTC:*
*Effective Tool for Developing the Law or Rubber Stamp?*
12 J. Comp. L. & Econ. 623 (2016) ...................................................................... 8–9

**INTRODUCTION**[1]

Contrary to the Commission's arguments, *Axon* directly addressed irreparable harm.  Justice Kagan, writing for a unanimous Supreme Court, held that "being subjected to unconstitutional agency authority" imposes a "here-and-now" injury that "***is impossible to remedy once the proceeding is over***."  *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

The Commission argues that Meta will not incur irreparable harm "for the same reason" as in Meta's *Facebook* appeal, in which this Court reasoned that "the expense and annoyance of litigation" is not irreparable harm.  (Opp. 8, 13.)  The argument that an injury from a constitutional violation by the Commission is not "materially" different from "the expense and annoyance of litigation" (Opp. 8) is as remarkable as it is wrong.  And the Commission's argument that an *Axon* "here-and-now" injury does not constitute irreparable harm—and that an additional ***existential injury*** is required—cannot be squared with the Supreme Court's decision in *Axon* (as multiple judges have concluded).  (Mot. 7, 20.)

The central "problem" that *Axon* addressed is "the interaction between the alleged injury and the timing of review."  598 U.S. at 191.  Because "a proceeding that has already happened cannot be undone"—even if the party asserting the claim

---

[1] Unless otherwise stated, emphasis is added and internal citations and quotation marks are omitted.

1

"*w*[*i*]*n*[*s*] before the agency"—courts must entertain *Axon* claims before an agency adjudication.  *Id*. (emphasis in original).

Against this backdrop, limiting courts' ability to prevent *Axon* injuries based on factors that make a threatened injury existential—such as the scope of the remedies sought and the respondent's financial condition—would undermine the core underpinning of *Axon*.

Regardless, the Commission altogether ignores that, under this Court's controlling precedents, Meta has established irreparable harm **irrespective of *Axon***. This Court should assume that Meta has shown likely success on its due process claim, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006), and under *Karem v. Trump*, 960 F.3d 656 (D.C. Cir. 2020), and *In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019), these constitutional injuries are plainly irreparable.

The Commission's arguments about the seriousness and likely success of Meta's appeal are equally deficient.  Its due process argument fails to acknowledge what the Commission actually said in the OTSC and only mentions in passing the operative regulation dictating the OTSC's required findings.  The Commission has already decided that changes to the order are "needed," as required by federal regulation.  This mandated prejudgment violates due process.  And absent an injunction and the opportunity to be heard on the merits of that constitutional

2

claim, the deprivation of Meta's due process rights will be permanent once the OTSC proceeding concludes.  That is because an appeal from the Commission's order to a federal court of appeals will come only after the constitutional injury is complete and "impossible to remedy."  *Axon,* 598 U.S. at 191.

Finally, in erroneously asserting that the Court's denial of an injunction pending appeal in Meta's *Facebook* appeal governs this motion, the Commission makes much of what it dubs Meta's "two-pronged" challenge to the OTSC proceeding.  (Opp. 1–2.)  But the Commission conspicuously omits that Meta asserted its constitutional claims ***together with*** its jurisdictional challenges to the OTSC proceeding in *Facebook*.  The DOJ, on behalf of the Commission, insisted however that Meta proceed separately, asserting that the constitutional claims in *Facebook* were "procedurally improper."  (A488–89 n.9.)  As Judge Kelly explained, his denial of jurisdiction meant that Meta would have to file a new action before a new judge (which Meta did).  (A356–57.)  On appeal, the government reiterated that only "jurisdictional challenges," and not constitutional challenges, are procedurally proper in the *Facebook* action.  (SA24.)  It cannot now have it both ways.

## I.     Meta Will Suffer Irreparable Harm Absent an Injunction

There is simply no merit to the Commission's arguments that Meta's *Axon* injury does not constitute irreparable harm.  Dismissing *Axon* as a "jurisdictional

holding" that "merely" recognizes a present but remediable injury (Opp. 13) disregards the well-considered reasoning of a unanimous Supreme Court. The irreparable nature of the injury resulting from subjection to structurally unconstitutional agency authority is *Axon*'s foundation, and exactly why the Supreme Court has held these claims must be heard before agency action. (*See supra* at 1–2.) Moreover, the Commission ignores *Axon*'s analogy to immunity doctrines, where the erroneous denial of immunity is a recognized source of irreparable harm and basis for a stay pending appeal. (Mot. 5–6, 21.) The articulated reasoning of *Axon* is that the "here-and-now" injury it recognized constitutes irreparable harm. Judge Howell relied on *Axon*'s "explicit language" to hold that such constitutional claims "suffice to show irreparable harm." *Scottsdale Cap. Advisors Corp. v. FINRA*, 2023 WL 3864557, at *13 (D.D.C. June 7, 2023).

The Commission invokes this Court's pre-*Axon* decision in *John Doe v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017)—without addressing Meta's point that the decision is not controlling because it "did not involve any threatened 'subjection to [an agency's] unconstitutionally structured decisionmaking process,'" and it addresses a posture that is the exact opposite of an *Axon* action's posture. (Mot. 22 (quoting *Axon*, 598 U.S. at 191).)[2] The Commission erroneously suggests that

---

[2] The Commission's reliance on *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 694 (D.C. Cir. 2015), is misplaced. (Opp. 13–14.) Nothing in that pre-*Axon*
(….continued)

*John Doe* is controlling "circuit precedent" to which this Court must adhere despite any "tension" with *Axon*. (Opp. 14–15 n.2.) But the Commission nowhere rebuts Meta's argument that *Axon* governs and *John Doe* does not.

The Commission objects to "stop[ping] in its tracks" agency proceedings whose structural constitutionality is challenged. (Opp. 14.) But in order to enjoin a proceeding, the challenge must raise, at a minimum, serious legal questions. The Commission does not—and cannot—identify any legitimate objection to enjoining a proceeding of seriously questionable constitutionality.

Absent an injunction, a court's ability to prevent an *Axon* injury would, in practice, devolve into an unseemly race between the court and the agency. If the agency "wins" by concluding its proceeding before the court can address the structural constitutional issues, then the constitutional harms that the agency imposes become "impossible to remedy." *Axon* , 598 U.S. at 191. The Commission implicitly conceded this below, arguing that Meta ***might*** be able to vindicate its rights because "it may take some time for the Commission or the ALJ to hear the issues." (A593.)

---

decision detracts from the centrality to *Axon* of harm "that cannot later be remedied." *Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307, at *2 (D.C. Cir. July 5, 2023) (Walker, J., concurring).

Independently, this Court has held that "a prospective violation of a constitutional right constitutes irreparable injury," *Karem*, 960 F.3d at 667, and that being forced to litigate before a biased adjudicator "is by its nature irreparable," *Al-Nashiri*, 921 F.3d at 238. The Commission's attempt to downgrade the gravity of its constitutional violations is foreclosed by this authority.

## II.    Meta's Appeal Likely Will Succeed and, at a Minimum, Will Raise Serious Questions

### A.    Meta Likely Will Prevail on Its Due Process Claim

To see the unconstitutional risk of bias inherent in the Commission's dual role as prosecutor and judge, one need look no further than its materialization in the OTSC proceeding against Meta. The Commission has prejudged the very issues that its brief identifies as the focal point of the OTSC proceeding:

> Meta seeks an injunction pending appeal that would bar the Commission from determining whether Meta failed to implement effective privacy protections and, relatedly, whether it would serve the public interest to modify the 2020 Order to incorporate additional protections for Meta's customers.

(Opp. 11.) In the OTSC itself, however, the Commission "conclu[ded]" that Meta was in "non-compliance" with its obligations to implement an effective privacy program, that such non-compliance constitutes "changed conditions," and that "additional modifications to the [2020] Order are needed." (A130–31.)

6

Unable to deny that the OTSC contains a legal conclusion regarding the remedy "needed," the Commission focuses on *other* language in the OTSC reflecting its prosecutorial role. (Opp. 19.) But that other language is entirely consistent with, and thus fails to rebut, Meta's showing that the Commission has prejudged the matter by acting *simultaneously* as prosecutor *and* judge. Indeed, prejudgment is present here because the Commission's conclusions as judge are set forth in the OTSC issued before Meta could be heard. And the Commission does not dispute that it concluded that the remedy of modification is "needed" *pursuant to its regulation*, which *requires* it to "stat[e] the changes [the Commission] proposes to make in [an existing] decision and the reasons they are deemed *necessary*." 16 C.F.R. § 3.72(b)(1).

Confronted with express language in the OTSC identifying its options in the OTSC proceeding solely as either "mak[ing] … the Proposed Decision and Order final or modify[ing] it in any way" (A120), the Commission asserts that nothing in that language "forecloses the possibility" the Commission does not modify the 2020 Order. (Opp. 19–20.) But that only highlights the absence of any such statement in the OTSC itself, which not only fails to contemplate that "possibility," but affirmatively describes the Commission's options without mentioning it.

The Commission argues that this Court cannot consider the OTSC proceeding as an example of the materialization of the unconstitutional risk of bias

inherent in the Commission's dual role because the OTSC proceeding is "a particular case." (Opp. 18.) That argument conflates (i) a challenge to an agency's bias in a single case with (ii) using the manifest bias in a (particularly relevant) case as evidence of an agency's structural unconstitutionality. The Supreme Court cautioned that courts must "be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Withrow v. Larkin*, 421 U.S. 35, 54 (1975).

In a concession that specific examples are probative of structural bias, the Commission has cited "particular" adjudications as (supposed) evidence of a lack of structural bias (A588), which Meta has rebutted (A614–15). Further, the bias manifested in the OTSC proceeding against Meta is structural because it was caused by the Commission's OTSC regulation, and could not have occurred absent its dual role.

The Commission downplays the persistent perception of bias as limited to "a segment of the public." (Opp. 18.) Here, the relevant "segment" includes FTC Commissioners and Chairs, two Supreme Court justices and the Ninth Circuit. (Mot. 11–13 n.6.)

Finally, the Commission quibbles whether it ***always*** or ***nearly always*** prevails before itself. (Opp. 16–17.) Its cited study (of adjudications back to the 1970s) confirms that, looking at cases ***from this century***, "one could infer that the

deck is stacked … Therein lies the claim that the FTC has ruled for itself in 100 percent of its cases over the past three decades."[3]  Nor can the Commission explain its markedly different records litigating before itself and before courts.

### B.    Meta Likely Will Prevail on Its Article II Claim

The Commission insists that Meta is asking the Court to "overrule" *Humphrey's Executor*, contending that *Humphrey's Executor* involved "an identical challenge" to "the very same statute."  (Opp. 20.)  That statute is dramatically different—and the Commission's need to erroneously contend that *Humphrey's Executor* involved "the very same statute" demonstrates why it does not control here.  *Humphrey's Executor* involved the "New Deal-era FTC" "as it existed in 1935."  *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198, 2200 (2020).  As the Commission admits, its statutory executive powers have burgeoned subsequently.  (A620 n.12.)

*Humphrey's Executor*, like every judicial decision, relates only "to a detailed set of facts."  *UC Health v. NLRB*, 803 F.3d 669, 682 (D.C. Cir. 2015) (Edwards, J., concurring).  And it must be "read in the light of [those] facts."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)  Because the facts have changed, the

---

[3] Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?* 12 J. Comp. L. & Econ. 623, 10 (2016).

Commission's attempt to apply *Humphrey's Executor* to today's FTC erroneously expands its exception.  The post-1935 expansions of executive authority cannot constitutionally coexist with the removal protections.[4]

### C.     Meta Likely Will Prevail on Its Other Claims

### 1.     Article I

The Commission argues that electing "whether and how to enforce the law" is always executive.  (Opp. 23.)  But "assign[ing] disputes to agency adjudication" is "peculiarly within the authority of the legislative department."  *Jarkesy v. SEC*, 34 F.4th 446, 459–62 (5th Cir. 2022) (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).  The Commission responds that *Jarkesy* is not "persuasive,"[5] but cites no contrary authority.  (Opp. 23–24.)  And whether and where the Commission "can obtain monetary penalties" is irrelevant.  (Opp. 24.)  Here, the Commission has claimed "the option" of enforcing an alleged order violation in federal court under Section 5(l) *or* before itself under Section 5(b).  *Injunctive* relief is available under either provision, but neither provides any "intelligible principle" to guide the Commission's claimed "choice" between them.

---

[4] The Fifth Circuit's decision declining to "overrule" *Humphrey's Executor* is therefore inapposite and unpersuasive.  *Illumina v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023).

[5] The Supreme Court should decide that within months.  Because the Commission identifies no urgency, this Court should, at a minimum, await that decision.

### 2.     Article III & Seventh Amendment

The Commission's claim that the 2020 Order "is neither a settlement nor a contract" defies settled law.  (Opp. 22.)  Agreed FTC orders are construed "as contracts," *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 (1975), because they give rise to "enforceable rights" against ***both parties***, backed by "consideration," that the Commission "may not unilaterally obliterate." *Elmo Div. of Drive-X Co. v. Dixon*, 348 F.2d 342, 345–46 (D.C. Cir. 1965).

The Commission determined that Meta violated those contracts, and that therefore it can modify them.  Meta is entitled to litigate those issues in federal court before a jury.  *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982).  *NACM-New England, Inc.* v. *Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 8 (1st Cir. 2019) (declaratory judgment of breach of contract without jury trial violated Seventh Amendment).

## III.   The Balance of Equities and Public Interest Strongly Favor an Injunction Pending Appeal

The Commission's argument on the public interest rests solely on its own assertions in the OTSC.  (Opp. 24.)  That is unavailing.

The Constitution bars unlawful agency action "even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. HHS*, 141 S.Ct. 2485, 2490 (2021), and constitutional violations are "always contrary to the public interest." *Gordon v.*

11

*Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). That is why the public interest favored Alpine Securities—not FINRA. 2023 WL 4703307.

Regardless, the Commission cannot offer any legitimate interest in ***immediate*** enforcement. *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 563 (D.D.C. 2018). It cannot dispute that the OTSC rests on years-old facts known to it for years pre-OTSC. (A130–31.) Nor does it argue that Meta currently is in "non-compliance" with ***any*** legal requirement.[6]

There would therefore be no harm in a "temporary extension," pending appeal, of the status quo of an order approved by the Commission (and Judge Kelly) which specifically contemplates (A117) continuing ***unmodified*** even if, as the OTSC concludes, its terms were violated. *See San Francisco v. USCIS*, 981 F.3d 742, 762 (9th Cir. 2020).

## CONCLUSION

Meta respectfully requests that this Court issue an injunction pending appeal.

---

[6] If there were an exigency, the Commission would have sought immediate relief in federal court. 15 U.S.C. § 53(b).

Dated: March 22, 2024                    Respectfully submitted,

                                         */s/ James P. Rouhandeh*

                                         _____
Paul J. Nathanson                        James P. Rouhandeh
DAVIS POLK & WARDWELL LLP                 Michael Scheinkman
901 15th Street, NW                      David B. Toscano
Washington, DC 20005                     John A. Atchley III
Tel: (202) 962-7000                      DAVIS POLK & WARDWELL LLP
paul.nathanson@davispolk.com             450 Lexington Avenue
                                         New York, New York 10017
                                         rouhandeh@davispolk.com
                                         michael.scheinkman@davispolk.com
                                         david.toscano@davispolk.com
                                         john.atchley@davispolk.com


                    *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because this document contains 2,594 words excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: March 22, 2024            */s/ James P. Rouhandeh*

_____

James P. Rouhandeh
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
rouhandeh@davispolk.com

*Counsel for Plaintiff-Appellant*