**No. 24-5054**                                              **September Term, 2023**

1:23-cv-03562-RDM

**Filed On:** March 29, 2024

Meta Platforms, Inc.,

      Appellant

   v.

Federal Trade Commission, et al.,

      Appellees

      **BEFORE:**    Millett, Pillard, and Wilkins, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for an injunction pending appeal, the opposition thereto, and the reply; and the administrative stay entered on March 18, 2024, it is

**ORDERED** that the administrative stay be dissolved. It is

**FURTHER ORDERED** that the motion for an injunction pending appeal be denied. Meta Platforms, Inc. ("Meta") has not satisfied the "stringent requirements for an injunction pending appeal." *Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*, 877 F.3d 1066, 1066 (D.C. Cir. 2017); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021).

For many of the reasons well explained in the district court's thorough opinion below, *see Meta Platforms, Inc. v. FTC*, No. 23-cv-03562, 2024 U.S. Dist. LEXIS 45452 (D.D.C. Mar. 14, 2024), Meta has not met its heavy burden of showing entitlement to an injunction pending appeal.

On the merits, Meta presses five constitutional challenges. None has a likelihood of success given binding precedent and the unusual record before us.

First, Meta argues that the Federal Trade Commission's combination of investigative and adjudicative functions within a single agency violates Meta's due process right not to have a decisionmaker that is institutionally biased against it.

But under longstanding precedent, it is settled that an agency generally can constitutionally undertake both investigative and adjudicative functions. *See Withrow v. Larkin*, 421 U.S. 35, 55–58 (1975); *In re Zdravkovich*, 634 F.3d 574, 579 (D.C. Cir. 2011). In addition, both Federal Trade Commission regulations and the Administrative Procedure Act require some structural separation between the adjudicative and investigative operations of federal agencies, *see* 16 C.F.R. § 4.7; 5 U.S.C. § 554(d)(2), and Meta does not suggest that the Commission's order-to-show-cause process fails to comply with those statutory and regulatory requirements.

Evidence of actual bias, of course, would trigger constitutional concerns. But Meta has not pointed to any objective indicia that the Commission is biased or close-minded in this proceeding. *See Williams v. Pennsylvania*, 579 U.S. 1, 8–9 (2016). Meta's reference to the Commission's supposed internal success rate is unsubstantiated, and at least one study tells a very different story. *See Meta Platforms*, 2024 U.S. Dist. LEXIS 45452, at *50–51 (explaining that a study found that "between 1977 and 2016, the Commission dismissed 29% of the administrative cases before it, including 16% on the merits") (citing Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. COMPETITION L. & ECON. 623, 626 (2016)). Besides, whatever the true number, a "raw statistic cannot of itself show bias in a particular case." *Singh v. Garland*, 20 F.4th 1049, 1055 (5th Cir. 2021); *cf. South Pac. Commc'ns Co. v. American Tel. & Tel. Co.*, 740 F.2d 980, 995 (D.C. Cir. 1984) ("[T]he statistical one-sidedness of the trial court's evidentiary, factual and legal rulings simply cannot be used to support an inference of judicial bias."). Meta's cherry-picked law review quotes are only marginally relevant at best. *See* Meta Motion 12–13. And nothing in the Commission's show-cause order—which by its text and by law is only preliminary (like all show-cause orders)—suggests that the Commission has prejudged Meta's case. *See* 16 C.F.R. § 3.72(b); *see also Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 509 F.3d 562, 571 (D.C. Cir. 2007).

On top of that, this is the third round in a long-running interchange involving consent orders agreed to by Meta and the Commission that address Meta's privacy policies. In 2012, Meta and the Commission agreed to the entry of a consent order resolving allegations of unlawful trade practices. Mot. to Dismiss Ex. B, *Meta Platforms,*

*Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-3; Mot. to Dismiss Ex. C, *Meta Platforms, Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-4. As part of that agreement, the consent order became a final administrative order, and Meta waived "any further procedural steps" and "all rights to seek judicial review or otherwise to challenge or contest the validity of the order[.]" Mot. to Dismiss Ex. B at 1, *Meta Platforms, Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-3.

Seven years later, the Department of Justice sued Meta in federal court for violating the 2012 administrative order. Meta resolved that case by stipulating to the entry of a second administrative order requiring protective privacy policies. *See* Mot. to Dismiss Ex. F, *Meta Platforms, Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-7. As part of that stipulation, Meta agreed to reopen the 2012 proceedings and waived its right to challenge the modified administrative order. *See id.*

Then, in 2023, the Commission ordered Meta to show cause why it should not modify the stipulated order due to Meta's alleged failure to institute and implement an effective privacy program as required by the 2012 and 2020 stipulated orders. *See* Mot. to Dismiss Ex. H, *Meta Platforms, Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-9.

Meta now complains that the Commission's processes deny it due process. Yet Meta fails to explain how due process requires non-enforcement of an order Meta agreed to have entered against it. Nor has it explained how the order to which it consented is somehow exempt from this enforcement proceeding. Importantly, the Federal Trade Commission Act allows the Commission to "reopen and alter, modify, or set aside, in whole or in part any report or order" through an administrative proceeding. 15 U.S.C. § 45(b). Most relevantly here, a regulation requires that "[e]very agreement in settlement of a Commission complaint" provide that the resulting order "may be altered, modified, or set aside" through the Act's administrative proceedings. 16 C.F.R. § 2.32(c). So when Meta consented to the Commission's 2020 order, it seems it also may have consented to the established procedures for modifying that order, including the order to show cause that it asks this court to enjoin. *Cf. United States Tr. Co. v. New Jersey*, 431 U.S. 1, 19 n.17 (1977); *Ionics, Inc. v. Elmwood Sensors*, 110 F.3d 184, 188 (1st Cir. 1997); *Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429–30 (1934).

Yet Meta offers no explanation as to how, given 16 C.F.R. § 2.32(c), its agreement to the entry of the 2020 order does not entail consent to the Commission's enforcement of that order. Neither does Meta provide reason to hold that its prior waivers of challenges to the orders do not apply to their enforcement. Perhaps Meta has a good argument on these fronts. But it has not shared them with this court, even though these issues were raised in district court, and that silence further diminishes any likelihood of success—or even of a court reaching the constitutional claims it presses.

Second, Meta claims that the Federal Trade Commission Act likely violates Article II by limiting the President's power to remove the Commissioners. The Supreme Court already answered this question adversely to Meta. *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629–32 (1935). The Supreme Court has not disturbed that precedent. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198–2200 (2020); *Severino v. Biden*, 71 F.4th 1038, 1047–48 (D.C. Cir. 2023).

In addition, as with the due process claim, Meta fails to explain how any alleged appointment problem was not surrendered in the two prior consent orders. Meta's appointment argument implies that the Commission lacked legal authority to enter those consent orders in the first place. Yet Meta expressly gave up legal challenges to the 2020 consent order, which is what the Commission seeks to enforce here. *See* Mot. to Dismiss Ex. F, *Meta Platforms, Inc. v. FTC*, No. 23-cv-03562 (D.D.C. Dec. 13, 2023), ECF No. 18-7.

Third, Meta has not demonstrated that the Act likely violates the nondelegation doctrine. When Congress creates a statutory right, Congress also determines the options for its adjudication. *See Crowell v. Benson*, 285 U.S. 22, 50–51 (1932). Meta identifies nothing in this case that involves a congressional delegation of that legislative function. Once presented with statutory options, it is then the Executive Branch's Article II prerogative to choose where and how to enforce that right in a particular case. *See Springer v. Government of Philippine Islands*, 277 U.S. 189, 202 (1928); *cf. United States v. Batchelder*, 442 U.S. 114, 124–26 (1979).

Further, as with the prior constitutional challenges, Meta fails to explain how it did not relinquish any such objection by forgoing any challenges to the orders and, by regulation, agreeing to the Commission's authority to enforce them. *See* 15 U.S.C. § 45(b); 16 C.F.R. §§ 2.32(c), 3.72. It also does not address how its prior endorsement

of the Commission's authority in district court when seeking entry of the 2020 stipulated order leaves it free to disavow the Commission's authority now.

Meta's fourth and fifth constitutional challenges—that the administrative adjudication allowed under the Act violates the Seventh Amendment and Article III—likewise do not appear likely to succeed.

With respect to the Seventh Amendment jury trial claim, the Commission in this case has issued an order to show cause regarding the proposed equitable modification of its consented-to administrative order.  The Commission is not seeking penalties or any form of relief arguably analogous to damages or other relief available at law.  It seeks only Meta's response to asserted failings in its privacy policies.  So the Seventh Amendment's guarantee of a jury trial for "Suits at common law" has no application here.  U.S. CONST. AMEND. VII.; *see Granfinanciera v. Nordberg*, 492 U.S. 33, 53–55 (1989); *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 449–51 (1977).  *Contrast* Petition for Writ of Certiorari at I, *SEC v. Jarkesy*, No. 22-859 (Mar. 8, 2023) (presenting the question of whether the Seventh Amendment allows the SEC to impose "civil penalties" via administrative proceedings).

As to the Article III claim, Meta is challenging the federal government's attempt to hold a hearing to decide whether the Commission should amend, for the second time, its own administrative order to obtain equitable relief for possible statutory violations pertaining to prophylactic consumer-protecting limitations on the company's commercial marketing of user's personal data.  Meta has provided no persuasive reason to believe that such a show-cause proceeding would adjudicate anything other than public rights.  *See Stern v. Marshall*, 564 U.S. 462, 493–95 (2011); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 344 (2018); *Granfinanciera*, 492 U.S. at 53.

Meta's attempt to repackage the matter as involving contract law fails for a simple reason: there is no contract.  The administrative order that the Commission seeks to modify is just that—an administrative order.  *Meta Platforms*, 2024 U.S. Dist. LEXIS 45452, at *58 n.8; *see United States v. Facebook, Inc.*, No. 19-cv-02184, 2023 U.S. Dist. LEXIS 210009, at *10–11 (D.D.C. Nov. 27, 2023).  While Meta consented to that order's entry and waived any challenges to its adoption, the administrative order itself is not a contract.  And we recently held that Meta is unlikely to succeed in recasting the Commission's action as anything else.  *See United States v. Facebook,*

*Inc.*, No. 23-5280, 2024 U.S. App. LEXIS 5979, at *2 (D.C. Cir. Mar. 12, 2024) (per curiam).

Lastly, as with the other constitutional claims, Meta has not explained how, under 16 C.F.R. § 2.32(c), it did not consent to the order's enforcement by the Commission in a show-cause proceeding as part of its consent to the order's entry. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015); *Pease v. Rathbun-Jones Eng'g Co.*, 243 U.S. 273, 278 (1917); *Hiriart v. Ballon*, 34 U.S. (9 Pet.) 156, 166–67 (1835).

With respect to the other injunction factors, Meta fares no better.

Meta has not shown that it is likely to suffer irreparable harm. Meta claims it will be "subject[] to a proceeding before an unconstitutionally structured administrative agency." Meta Motion 20. But Meta has not shown a likelihood of any unconstitutional proceeding occurring, especially given its past consent to entry of the order at issue and, by regulation, its enforcement through a show-cause proceeding. *See Archdiocese of Wash.*, 897 F.3d at 334 ("[T]he deprivation of constitutional rights constitutes irreparable injury only to the extent such deprivation is shown to be likely."). Neither does "the expense and annoyance of litigation, including in a[ Federal Trade Commission] proceeding, . . . constitute irreparable injury." *Facebook*, 2024 U.S. App. LEXIS 5979, at *2 (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)).

Finally, Meta's failure to show a likelihood of success on this appeal or irreparable injury tips the balance of equities and the public interest against an injunction. *See Facebook, Inc.*, 2024 U.S. App. LEXIS 5979, at *2–3; *Archdiocese of Wash.*, 897 F.3d at 335.

<u>**Per Curiam**</u>

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:   /s/
Emily Campbell
Deputy Clerk